IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALBERT D. DRAWDY,

   Plaintiff,

v.

DON JACKSON CHRYSLER
DODGE JEEP, INC.,

   Defendant.

CIVIL ACTION FILE

NO. 1:14-CV-03490-WSD-WEJ

## **ORDER**

This matter is before the Court on Defendant's Motion to Compel Arbitration [6]. For the reasons stated below, said Motion is **GRANTED**.

### **I. BACKGROUND**

On October 30, 2014, plaintiff, Albert D. Drawdy, filed suit against defendant, Don Jackson Chrysler Dodge Jeep, Inc., alleging race discrimination and retaliation in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. (Compl. [1] ¶ 1.) Defendant filed an Answer on January 2, 2015, asserting that it was incorrectly named in the Complaint, and stating that its correct legal name was "Don Jackson Automotive Group, LLC d/b/a/ Don Jackson Chrysler Dodge Jeep." (Ans. [4] 1.) The Answer's Second Affirmative Defense is

that plaintiff's claims should be dismissed because he is subject to a mandatory arbitration agreement.

Shortly thereafter, defendant filed the instant Motion to Compel Arbitration. Defendant asserts that this action should be stayed and that this Court should compel plaintiff to arbitrate his claims under the terms of an Employee Agreement for Binding Arbitration ("Arbitration Agreement") that he signed on April 27, 2009. (See Def.'s Ex. B [6-3].) The relevant terms of the Arbitration Agreement are as follows:

> 2. <u>ACKNOWLEDGMENT OF BINDING ARBITRATION</u>
>
> (a) Employee acknowledges that certain disputes can arise before, during or after his employment with Employer. Employee desires to resolve any and all disputes that arise between Employee and Employer, its directors, managers, officers, owners, shareholders, subsidiaries, affiliates, successors, assignees, attorneys, agents and all former, present and future employees of Employer through a binding arbitration process as described in this agreement.
>
> (b) This Agreement to submit matters to binding arbitration is a condition of Employee's at-will employment with Employer. Employee agrees that pursuant to this Agreement, final and binding arbitration is the sole and exclusive means for Employee to resolve any and all claims or disputes against Employer, and Employee waives the right to resolve any claim or dispute by filing a lawsuit or other civil action or proceeding against Employer, including waiving the right to a jury trial or court trial unless otherwise provided herein.

EMPLOYEE IS VOLUNTARILY WAIVING ANY RIGHTS THAT HE OR SHE HAS TO RESOLVE DISPUTES AGAINST EMPLOYER THROUGH TRIAL BY A JUDGE OR JURY.

3. <u>CLAIMS</u>. Employee agrees that Employee shall submit to binding and final arbitration all claims, disputes, demands, causes of action or controversies arising out of or relating to Employee's employment application, candidacy for employment, employment relationship, cessation of employment, contracts between the parties, and any and all claims, rights or causes of action arising under federal, state or local law or regulation as discussed below that Employee has or may have against Employer, its officers, directors, employees, independent contractors, shareholders, attorneys or agents (collectively[,] the "Claims"). The matters covered by this Agreement include, but are not limited to, the claims, rights or causes of action arising under federal, state and local law, including, but not limited to, those relating to discrimination, harassment, wrongful termination, wrongful demotion, breach of express or implied contract, breach of the implied covenant of good faith and fair dealing, intentional or negligent infliction of emotional distress, violation of public policy, retaliation, whistle blowing, fraud, defamation, invasion of privacy, negligence, assault, battery or other tort claims as well as claims for wages, compensation and benefits. The matters subject to this Agreement also include, without limitation, contractual and common law claims, statutory claims such as, but not limited to, claims for violation of discrimination, fair employment, human rights and civil rights laws, and include, without limitations, claims for discrimination and/or harassment based on color, race, sex, sexual orientation, religion, national origin, ancestry, citizenship, age, martial status, physical and/or mental disability, pregnancy, medical condition or veteran status, whether protected by common law or federal, state or local statute or regulation, and the following federal acts: the Age Discrimination in Employment Act, the Americans with Disability [sic] Act, the Equal Pay Act, the Civil Rights Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the False Claims Act, and the

AO 72A
(Rev.8/82)

> Employee Retirement Income Security Act of 1974. Employee's right to pursue administrative remedies is not affected by this Agreement. This Agreement does not cover Employee's claims rights or causes of action for unemployment benefits, worker's compensation benefits, and all of Employer's claims of any nature against Employee.

(Def.'s Ex. B, ¶¶ 2-3.)[1] The Arbitration Agreement was signed by a representative of Don Jackson Lincoln Mercury, Inc. and plaintiff. (Id. at text following ¶ 14; see also First Derek Jackson Aff. [6-2] ¶ 5.)

## II. ANALYSIS

Plaintiff argues that defendant's Motion should be denied because: (1) the Arbitration Agreement is not a valid written agreement to arbitrate; (2) the Arbitration Agreement was signed under duress (i.e., he had no choice but to sign it in order to receive a job offer); (3) the Arbitration Agreement is an unenforceable contract of adhesion; (4) the Arbitration Agreement is unconscionable because the parties did not have equal bargaining power; (5) the Arbitration Agreement lacks mutuality; (6) the Arbitration Agreement fails for lack of consideration; (7) the Federal Arbitration Act ("FAA") is unconstitutional; (8) the plain meaning of the FAA excludes plaintiff from its coverage; (9) defendant lacks standing to enforce the

---

[1] Paragraphs 5-9 of the Arbitration Agreement deal with commencement of the arbitration, arbitration procedures, the arbitrator's award, confidentiality of the award, and arbitration fees and costs, respectively.

4

Arbitration Agreement because it is not a signatory to it; (10) the Arbitration Agreement is unenforceable because it deprives plaintiff of his right to trial by jury; and (11) the Arbitration Agreement is unenforceable under the FAA because it does not evidence commerce. (See Pl.'s Resp. [8] 2-19.) Defendant rebuts each of plaintiff's arguments. (See Def.'s Reply Br. [9] 2-11.)

None of plaintiff's arguments requires denial of defendant's Motion. First, plaintiff fails to cite any authority showing that the Arbitration Agreement is not a valid written agreement to arbitrate. Second, plaintiff's assertion that the Arbitration Agreement is void because he signed it under duress is without merit. See Kramer v. Kroger Co., 534 S.E.2d 446, 450 (Ga. Ct. App. 2000) (holding that "[o]ne may not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement") (citations and internal quotation marks omitted).

Plaintiff's third argument that the Arbitration Agreement is an unenforceable contract of adhesion fails because there "is nothing inherently unfair or oppressive about arbitration clauses." Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir. 1986) (per curiam). Indeed, the FAA exemplifies a strong federal

5

policy in favor of arbitration. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Absent evidence that plaintiffs lacked a "meaningful choice" or that the arbitration clause is "inherently unfair or oppressive," his argument fails. See Driscoll v. Smith Barney, Harris Upham & Co., 815 F.2d 655, 659 (11th Cir.), vacated on other grounds, Smith Barney, Harris, Upham & Co. v. Adrian, 484 U.S. 909 (1987). Plaintiff has demonstrated neither.

Fourth, the Arbitration Agreement is not unconscionable because the parties lacked equal bargaining power. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Fifth, the assertion that the Arbitration Agreement is void because it lacks mutuality is also without merit. See Saturna v. Bickley Constr. Co., 555 S.E.2d 825, 827 (Ga. Ct. App. 2001) (holding that "an arbitration provision was not unconscionable because it lacked mutuality of remedy"). Sixth, plaintiff's claim that the Arbitration Agreement fails for lack of consideration is meritless. See Thi of Ga. at Shamrock, LLC v. Fields, No. CV 313-032, 2013 WL 6097569, at *4 (S.D. Ga. Nov. 18, 2013) (rejecting plaintiff's assertion that the arbitration agreement was not supported by consideration, because mutual promises to arbitrate are sufficient

6

forms of consideration); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1376 (11th Cir. 2005) ("Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract.").

Plaintiff's seventh argument that the FAA is unconstitutional is also unsupported by any authority. Congress enacted the FAA in 1925 "to reverse longstanding judicial hostility toward arbitration." Caley, 428 F.3d at 1367. The FAA reflects "a liberal federal policy favoring arbitration agreements." Hill v. Rent-A-Ctr., Inc., 398 F.3d 1286, 1288 (11th Cir. 2005) (internal citation and quotation marks omitted). One purpose behind the FAA is "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less costly than litigation." Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998) (internal citation and quotation marks omitted). Had plaintiff bothered to research this argument, he would have seen that the Supreme Court upheld the constitutionality of the FAA in 1967. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405 (1967) (FAA is constitutional based upon and confined to federal foundations of control over interstate commerce and admiralty).

AO 72A
(Rev.8/82)

Plaintiff's eighth argument is that the plain meaning of the FAA excludes him from its coverage. Plaintiff cites no case authority showing that a person employed as a car salesman is excluded from coverage of the FAA. Instead, the FAA generally provides for the enforceability of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has clarified that the FAA generally applies to contracts of employment except those involving "transportation workers." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). Transportation workers include "only employees actually engaged in transportation of goods in commerce." Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1060 (11th Cir. 1998) (Cox, concurring for majority of court); see also Hill, 398 F.3d at 1289 (in enacting the FAA's "engaged in commerce" exception, Congress was concerned only with giving the arbitration exemption to "classes" of transportation workers within the transportation industry). A car salesman like plaintiff is not actually engaged in transportation of goods in commerce.

Plaintiff's ninth argument is that defendant lacks standing to enforce the Arbitration Agreement because it is not a signatory to it. Specifically, plaintiff shows that he sued Don Jackson Chrysler Dodge Jeep, Inc.; that defendant asserts that its proper name is Don Jackson Automotive Group, LLC d/b/a/ Don Jackson

8

Chrysler Dodge Jeep; but that the other signatory to the Arbitration Agreement is Don Jackson Lincoln Mercury, Inc. (also called the "Employer"), and that someone signed the Arbitration Agreement on behalf of Don Jackson Lincoln Mercury, Inc. Plaintiff further asserts that he never worked for Don Jackson Lincoln Mercury, Inc., and that nothing in the Arbitration Agreement allows some unexplained and potentially unrelated entity like Don Jackson Lincoln Mercury, Inc. to force him to arbitrate claims he has against Don Jackson Chrysler Dodge Jeep.[2]

---

[2] Defendant explains the inter-relationship of the companies owned by Don Jackson through the Affidavit of his son, Derek Jackson. (Second Derek Jackson Aff. [9-2] ¶¶ 2-3.) Derek Jackson avers that a new entity called "Don Jackson Automotive Group, LLC" was formed in April 2009, in which he and his father are shareholders. (Id. ¶ 4.) Don Jackson Automotive Group, LLC purchased a Chrysler Dodge Jeep franchise, which became known as "Don Jackson Automotive Group, LLC d/b/a Don Jackson Chrysler Dodge Jeep." (Id.) At the time of plaintiff Drawdy's hire in April 2009, the entity which employed him was Don Jackson Automotive Group, LLC. (Id. ¶ 5.) Don Jackson also owned a Lincoln Mercury dealership, know as Don Jackson Lincoln Mercury, Inc. (Id. ¶ 6.) Don Jackson was the sole shareholder in that corporate entity. (Id.) Following the purchase of the Chrysler Dodge Jeep franchise by Don Jackson Automotive Group, LLC, a majority of the employees of Don Jackson Lincoln Mercury, Inc. became employees of Don Jackson Automotive Group, LLC. (Id. ¶ 7.) During this period of transition of employees from Don Jackson Lincoln Mercury, Inc. to Don Jackson Automotive Group, LLC, new employees of Don Jackson Automotive Group, LLC were signing employment forms, including the Arbitration Agreement at issue and an Employment Agreement [9-1], which showed Don Jackson Lincoln Mercury, Inc. as the Employer, and which forms had not yet been amended to reflect the name of the new dealership, i.e., Don Jackson Automotive Group, LLC d/b/a Don Jackson Chrysler Dodge Jeep. (Id. ¶ 8.) The terms and conditions of employment, including

Despite the facial appeal of plaintiff's argument, the Eleventh Circuit, this Court, and Georgia's appellate courts have invoked equitable estoppel to allow a non-signatory like defendant to enforce an arbitration agreement against a signatory. See Escobal v. Celebration Cruise Operator, Inc., 482 F. App'x 475, 476 (11th Cir. 2012) (per curiam); Wallace v. Rick Case Auto, Inc., 979 F. Supp. 2d 1343, 1347-50 (N.D. Ga. 2013); In re Tom Watson, No. 1:05-CV-1117-WSD, 2006 WL 1566968, at *3 (N.D. Ga. Mar. 28, 2006); Price v. Ernst & Young, LLP, 617 S.E.2d 156, 160-61 (Ga. Ct. App. 2005).[3]

For example, the plaintiffs in Wallace, who worked as salespersons in the car business, filed an action claiming discrimination, retaliation and negligent hiring and supervision against Rick Case Cars, Inc. a/k/a Rick Case Automotive Group d/b/a Rick Case Cars. 979 F. Supp.2d at 1345. Defendant Rick Case Cars, Inc. operates several car dealerships in Georgia, Florida, and Ohio. When beginning work, two

---

the Arbitration Agreement, for those previously employed by Don Jackson Lincoln Mercury, Inc. did not change once they became employees of Don Jackson Automotive Group, LLC. (Id. ¶ 9.)

[3] Although state law governs issues related to the scope, validity, and enforceability of arbitration agreements, see Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631-32 (2009), Georgia courts apply the same standards as the Eleventh Circuit. See Wallace, 979 F. Supp. 2d at 1348.

10

of the plaintiffs executed an employment agreement with an arbitration provision which named Rick Case Automotive Group as the employer. Id. Just as in the instant case, the plaintiffs in Wallace argued that Rick Case Cars, Inc. lacked standing to compel arbitration because their employment agreements were with Rick Case Automotive Group. Id. at 1347. The court assumed for purposes of the motion to compel arbitration that Rick Case Cars, Inc. was not a signatory to the arbitration agreement. Id. The issue was whether Rick Case Cars, Inc., as a non-signatory, could compel plaintiffs to arbitrate their claims. Id. at 1348. The court held that a signatory to an arbitration agreement could be equitably estopped from avoiding the agreement when asserting claims that are related to or intertwined with it, and allowed a non-signatory–Rick Case Cars, Inc.–to enforce the arbitration agreement. Id. at 1350.

Moreover, a mistake in listing the proper employer in the arbitration agreement does not allow the signatory employee to escape the promise he made. See Garcia v. Mason Contract Prods., LLC, No. 08-23103-CIV, 2010 WL 520805 (S.D. Fla. Feb. 9, 2010). In Garcia, an employee who installed draperies and bedding in hotels brought a wage and hour claim against his employer, Mason Contract Products, LLC ("Mason"). Id. at *1. In response to Mason's contention

11

that the claim should go to arbitration, the plaintiff-employee showed that he signed an employment agreement (which contained an arbitration clause) with MRC Industries, Inc. ("MRC"), not Mason. Id. at *3. And just as Mr. Drawdy argues here, the Garcia plaintiff argued that Mason, as a non-signatory to the employment agreement, had no standing to compel arbitration. Id. at *3.

The record showed that MRC was related to Mason through the common ownership and control of Leonard Horowitz, but the entities did not have a parent/subsidiary relationship. Garcia, 2010 WL 520805, at *2. Moreover, the attorney who drafted the employment agreement erred by inserting MRC as the employer instead of Mason. Mr. Horowitz did not catch the error and signed the agreement on behalf of MRC, not Mason. Id. The Garcia court concluded that, although the plaintiff's claim was statutory and did not directly arise from the employment agreement with MRC, "his claim presumes the existence of an employment relationship. And as he concedes that such a relationship was formed only after he signed the employment agreement, it is clearly not a stretch to find that his claim is related to such an agreement." Id. at *5. Moreover, Mason was a de facto successor to its affiliate's employment agreement with an employee who worked only for Mason for the life of the agreement. Id. As a policy matter, the

12

court noted that the plaintiff had no basis to complain because he agreed to an arbitration clause as a condition for his employment as an installer for Mason. As a signatory, it was far less prejudicial to enforce his own agreement, as compared with a situation where a non-signatory was compelled to arbitrate. Id. Thus, Garcia used equitable principles to enforce an arbitration agreement against a signatory even though a writing did not exist with the non-signatory defendant. Id. at *6.

In this case, plaintiff signed an Employment Agreement (see Def.'s Ex. A [9-1]), along with a binding Arbitration Agreement, upon his employment. Both the Employment Agreement and the Arbitration Agreement list the employer's name as Don Jackson Lincoln Mercury, Inc. As shown in the Second Jackson Affidavit (see supra note 2), Don Jackson Lincoln Mercury, Inc.'s sole shareholder was Don Jackson. Mr. Drawdy was hired to work at the Don Jackson Chrysler Dodge Jeep franchise, which was owned by Don Jackson Automotive Group, LLC, which in turn was owned by Don and Derek Jackson. However, the paperwork signed by Mr. Drawdy at the time of his employment in April 2009 had not yet been changed to reflect Don Jackson Automotive Group, LLC d/b/a Don Jackson Chrysler Dodge Jeep as the employer, as that entity had just been formed in April 2009. Plaintiff will not be allowed to take advantage of a mistake defendant made in having him sign an

13

outdated form. Don Jackson Automotive Group, LLC d/b/a Don Jackson Chrysler Dodge Jeep, is related to Don Jackson Lincoln Mercury, Inc., through Don Jackson's common ownership and control. Because of that common ownership and control between Don Jackson Lincoln Mercury, Inc. and the defendant, plaintiff is bound by the Arbitration Agreement that he signed as to the claims that he makes here against his employer, Don Jackson Automotive Group, LLC d/b/a Don Jackson Chrysler Dodge Jeep.

Plaintiff's tenth argument–that the Arbitration Agreement is unenforceable because it deprives him of a jury trial–is also without merit. "[W]here a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes." Caley, 428 F.3d at 1372. Finally, the Court rejects plaintiff's eleventh argument (i.e., that the Arbitration Agreement is unenforceable under the FAA because it does not evidence commerce) because he cites no authority to support it. Indeed, it is settled that the phrase "involving commerce" as used in FAA is not to be narrowly construed, because commerce reaches not only the actual physical interstate shipment of goods, but also contracts relating to interstate commerce. Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co., 516 F. Supp. 1305, 1310 (D.C.D.C. 1981).

"In order to determine whether arbitration should be compelled, the Court must assess whether: '(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.'" Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002) (quoting Collins v. Int'l Dairy Queen Inc., 2 F. Supp. 2d 1465, 1468 (M.D. Ga. 1998)). The fact that plaintiff advances statutory discrimination claims does not change this analysis, as "compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." Caley, 428 F.3d at 1367. Because there is a valid written agreement to arbitrate, the issue sought to be arbitrated is arbitrable under the Arbitration Agreement, and the party asserting the claims (i.e., Mr. Drawdy) has failed or refused to arbitrate the claims, arbitration will be compelled.

15

### III. CONCLUSION

For the reasons explained above, Defendant's Motion to Compel Arbitration [6] is **GRANTED**. This case is **STAYED** pursuant to 9 U.S.C. § 3, and the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case fifteen (15) days after the entry of this Order. During that fifteen-day period, either party may file objections to this Order under 28 U.S.C. § 636 asserting that it is clearly erroneous or contrary to law. Should timely objections be filed, the Clerk should not stay or administratively close this case, but should submit those objections to the assigned District Judge and await further instructions from the Court.

**SO ORDERED**, this 5th day of February, 2015.

*/s/ Walter E. Johnson*
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)